IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT L. MIHAILOVICH, ) | |
| ID # 33446-177, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:06-CV-1603-N (BH) |
| ) | ECF |
| FEDERAL BUREAU OF PRISONS, ) | Referred to U.S. Magistrate Judge |
|     Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND[1]

Petitioner, a federal prisoner currently incarcerated in Seagoville, Texas, purports to bring this habeas action pursuant to 28 U.S.C. § 2241, and names the Federal Bureau of Prisons (BOP) as respondent.

Petitioner is serving a twenty-one month sentence for mail fraud and aiding and abetting. He has a current projected good conduct release date of June 27, 2007. The BOP has denied petitioner's request for placement in a halfway house or Community Correction Center (CCC).[2] It has

---

[1] The background section is taken from various filings in this action, as well as taking judicial notice of proceedings and filings in *United States v. Mihailovich*, No. 3:05-CR-0067-N (N.D. Tex.), petitioner's federal criminal action that resulted in his federal incarceration.

[2] Respondent informs the Court and petitioner that, as of March 31, 2006, the BOP refers to halfway houses which were formerly titled "Community Corrections Centers" as "Residential Reentry Centers" (RRCs). Because much of the authority cited herein refers to halfway houses or CCCs, these terms will be used interchangeably with RRCs.

indicated that petitioner has a pre-release preparation date of May 4, 2007, the earliest date petitioner would be permitted to transfer to a RRC under regulations implemented in February 2005.

Petitioner contends that he has twice pursued administrative remedies regarding his claims to no avail. According to petitioner, he commenced his most recent pursuit on August 8, 2006, by requesting that the BOP consider his request for placement in a RRC or in home confinement. On that same date, his request was denied in light of a December 13, 2002 memorandum from the Office of Legal Counsel, which stated that a prior practice of transferring an offender to a non-prison site was unlawful. Later in August 2006, petitioner filed a Request for Administrative Remedy that was denied by the Warden of FCI Seagoville on September 7, 2006, based upon the December 2002 memorandum. In September 2006, petitioner filed a Regional Office Administrative Remedy Appeal, which the Regional Director denied on October 4, 2006; petitioner was informed that May 4, 2007, was the earliest date he would be "permitted to transfer to a Residential Reentry Center." Petitioner thereafter filed a Central Office Administrative Remedy Appeal, which was denied on December 12, 2006, based upon 28 C.F.R. § 570.21.[3]

Prior to the resolution of petitioner's most recent attempt to exhaust his administrative remedies, petitioner filed the instant action on August 24, 2006, when he placed his petition in the prison mail system with prepaid postage for delivery to this Court. Pursuant to 28 U.S.C. § 2241, petitioner challenges the manner in which his sentence is being executed by the BOP based upon the BOP's stance regarding placement in a RRC. He argues that "the BOP had, and continues to have, the obligation under U.S. law, to consider [him] for community confinement and/or home

---

[3] Respondent provides no rationale for the prior reliance on the December 2002 memorandum in light of the regulations implemented in February 2005 and codified in 28 C.F.R. § 570.21.

2

confinement both currently and at the time of his placement into BOP custody." He emphasizes that he "is not challenging the condition of his sentencing but rather the execution of his sentencing", and thus argues that § 2241 provides the proper vehicle for his claims. He contends that the BOP has violated 18 U.S.C. § 3621(b) by following regulations regarding its "categorical exercise of discretion for designating inmates to community confinement" that were struck down as illegal and subversive to congressional intent in *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005) and *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006). He prays that the Court will restore his "right to a lawful 'sentencing execution'" by ordering the BOP to comply with 18 U.S.C. § 3621(b) by placing him "into home confinement and/or community custody."

On December 28, 2006, respondent filed a motion to dismiss this action and argues that (1) petitioner has named an improper respondent; (2) the Court lacks jurisdiction under § 2241 because petitioner has not exhausted his administrative remedies;[4] and (3) petitioner fails to state a claim upon which relief may be granted because the BOP's new regulations implemented on February 14, 2005, *i.e.*, 28 C.F.R. Part 570, codify the BOP's categorical exercise of discretion in decision regarding placement in halfway houses.

On January 8, 2007, the Court received petitioner's response to the motion to dismiss. On January 22, 2007, respondent filed a reply to petitioner's response. Although respondent had previously conceded that petitioner properly pursues this action pursuant to 28 U.S.C. § 2241, respondent reversed its position in its reply brief and argued that the Court lacks jurisdiction under § 2241 because petitioner is not challenging the fact or duration of his custody but is instead challenging

---

[4] In its motion to dismiss, respondent concedes that jurisdiction lies under 28 U.S.C. § 2241 by stating: "As the petitioner is challenging the BOP's policy regarding placement of inmates into halfway houses, he is thereby challenging the place of confinement. Therefore, the court has jurisdiction pursuant to § 2241."

3

where he should serve his sentence. On February 2, 2007, the Court received petitioner's response to that reply.[5]

In light of respondent's new argument that this action is not properly brought pursuant to 28 U.S.C. § 2241, the Court first considers the nature of this action.

## II. NATURE OF ACTION

Petitioner commenced this action by filing a pleading entitled "Motion to Correct the Execution of Sentence Pursuant to 28 U.S.C. § 2241" to challenge the BOP's initial denial of placement in a RRC or home confinement as well as the BOP's subsequent denials to place him in a RRC or home confinement based on a federal policy. He also paid the $5 filing fee associated with habeas actions. Although respondent initially conceded in its motion to dismiss that jurisdiction lies under § 2241, in its reply to petitioner's response to that motion, it argues that § 2241 provides no jurisdictional basis for this action because petitioner is challenging where he should serve his sentence, not the fact or duration of his custody.[6]

In his response to the argument that this action is not properly brought pursuant to 28 U.S.C. § 2241, petitioner argues that he is in custody in violation of 18 U.S.C. § 3621(b), that he may

---

[5] For ease of reference, the Court will refer to petitioner's response as a sur-reply.

[6] Respondent's arguments track this Court's unpublished discussion in *Aguilar v. Joslin*, No. 3:05-CV-0679-N (N.D. Tex. Jul 20, 2005) (Findings, Conclusions, and Recommendation (FCR) accepted by the District Court), regarding whether this type of challenge is properly brought as a habeas action. In *Aguilar,* this Court recognized (1) a circuit and intra-district split "regarding what type of action a prisoner should file to contest 'his CCC placement'"; (2) the absence of a Fifth Circuit pronouncement regarding the issue in the context of CCC placement; and (3) a bright-line rule espoused in *Carson v. Johnson*, 112 F.3d 818 (5th Cir. 1997) for determining whether an action is a habeas action or a civil action under 42 U.S.C. § 1983. *Aguilar*, No. 3:05-CV-0679-N (FCR at 1-2). The Court ultimately "decline[d] to fully consider whether *Carson* supported construing the "action as a civil action that is subject to the Prison Litigation Reform Act (PLRA)" because the issues raised by *Aguilar* were moot in light of changes to the relevant BOP policy which became effective in February 2005. *Id.* (FCR at 3-9 (noting that petitioner challenged only the policy which became effective in December 2002)).

4

proceed under § 2241 to challenge the execution of his sentence, and that respondent misrepresents *Carson*.  However, § 3621(b) merely provides authority to the BOP to designate the place of imprisonment for federal prisoners; it has no bearing on the validity or length of petitioner's custody unless the Court narrowly construes custody to exclude pre-release custody in a halfway house.  For purposes of habeas relief, "custody" is broadly construed and includes release on parole.  *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).  A prisoner is certainly in custody within the meaning of the habeas statutes whether he is physically incarcerated in a federal prison facility or in a halfway house.[7]

Nevertheless, it is well-established that federal prisoners may challenge the execution of their sentences via § 2241.  *See, e.g., Leggett v. Fleming*, 380 F.3d 232, 234 (5th Cir. 2004) (time credit issues); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000) (early release consideration); *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992) (time credit issue).  Several circuits have indicated that § 2241 provides a proper vehicle for considering where a federal sentence should be served.  *See, e.g., Levine v. Apker*, 455 F.3d 71, 77-78 (2d Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 242-44 (3d Cir. 2005) (finding that a challenge to BOP regulations governing placement in a CCC is a proper challenge to the execution of the inmate's sentence and is therefore properly brought pursuant to § 2241); *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991) (holding that challenge to place of imprisonment, not fact of federal conviction, properly brought under § 2241); *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (holding that challenges to the "manner,

---

[7] In fact, the Fifth Circuit recently found that an individual who resides in a halfway house as a condition of his release to mandatory supervision under Texas law is a "prisoner" within the meaning of the PLRA.  *See Jackson v. Johnson*, 475 F.3d 261 (5th Cir. 2007).  *Jackson* provides additional support for finding that placement in a halfway house does not constitute a release from custody, but rather, a change in custody.

location, or conditions of a sentence's execution must be brought pursuant to § 2241"). One court in this district has also so held. *See United States v. Wooderts*, No. 3:97-CR-0054-D, 2007 WL 549406, at *1 (N.D. Tex. Feb. 21, 2007) (Findings, Conclusions, and Recommendation accepted by District Court, which notes that § 2241 provides the proper vehicle for challenges to the execution of a federal sentence, such as challenging a failure "to consider and/or designate the state prison as a place of confinement for his federal sentence" and challenging whether the federal sentence should run concurrently with a state sentence).

"[T]he precise meaning of 'execution of the sentence' is hazy." *Woodall*, 432 F.3d at 242. The line between a habeas case and a typical civil action is likewise "hazy". *See Richmond v. Scibana*, 387 F.3d 602, 605-06 (7th Cir. 2004). In *Carson v. Johnson*, 112 F.3d 818 (5th Cir. 1997), the Fifth Circuit endeavored to eliminate the haziness in this circuit between habeas and § 1983 actions by setting out a bright-line rule for determining the proper basis for a given action:

> Generally, § 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures. A habeas petition, on the other hand, is the proper vehicle to seek release from custody.
> The distinction is blurry, however, when, as here, a prisoner challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody. We have adopted a simple, bright-line rule for resolving such questions. If "a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release," the proper vehicle is a § 1983 suit.

112 F.3d at 820-21 (citations omitted).

Under *Carson*, the instant action appears to be a non-habeas case because it does not automatically entitle petitioner to accelerated release from custody – it merely changes the nature of petitioner's custody. Notwithstanding the bright-line rule set forth in *Carson*, the Fifth Circuit recently affirmed the dismissal of a § 2241 petition which alleged a constitutional violation stemming

from the BOP's designation of a CCC for service of the last ten percent of the sentence instead of home confinement. *See Sonnier v. Francis*, No. 06-20112, 2007 WL 509544, at *1 (5th Cir. Feb. 14, 2007) (per curiam). *Sonnier* did not address a challenge to the validity of the BOP's policy regarding placement in a halfway house and nor the propriety of pursuing the claims pursuant to § 2241, however.

Furthermore, *Carson* dealt with a state prisoner who could pursue his claims pursuant to 42 U.S.C. § 1983. Here, petitioner is a federal prisoner who has no recourse to § 1983 for his claims. Although the federal counterpart to § 1983 lies with a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), a *Bivens* action does not lie against the BOP or the federal government. *See Chimney v. United States*, No. 4:05-CV-261-Y, 2005 WL 2219259, at *2 (N.D. Tex. Sept. 9, 2005). Although the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, may provide a proper basis for a civil action in some circumstances, *see Richmond v. Scibana*, 387 F.3d 602, 605-606 (7th Cir. 2004) (discussing when a claim may arise under the APA), it provides no basis for challenging decisions made pursuant to 18 U.S.C. § 3621(b), *see* 18 U.S.C. § 3625 (specifically stating that the APA is inapplicable "to the making of any determination, decision, or order under this subchapter", *i.e.*, §§ 3621-26); *Chimney*, 2005 WL 2219259, at *2. Finally, as noted in *Woodall*, confinement in a traditional federal prison is "qualitatively different" from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC. 432 F.3d at 243-44. In light of *Sonnier*, the other cited cases, the facts of *Carson*, and

7

petitioner's lack of recourse, the Court finds that petitioner properly invoked jurisdiction under § 2241.[8]

## III.  PROPER RESPONDENT

The named respondent in this action, the Federal Bureau of Prisons, submits that David Berkebile, Warden of FCI Seagoville, is the proper respondent for this action filed pursuant to 28 U.S.C. § 2241.  Section 2242 of Title 28 of the United States Code requires an application for writ of habeas corpus to name the petitioner's custodian as respondent.  In this instance, petitioner's immediate custodian is the Warden of FCI Seagoville.  The Warden of petitioner's place of incarceration is the proper respondent for this § 2241 action.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-42 (2004); *Moreland v. Federal Bureau of Prisons*, 431 F.3d 180, 183 n.6 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1906 (2006).  Accordingly, if the District Court agrees that this action properly proceeds pursuant to 28 U.S.C. § 2241, it should substitute David Berkebile as respondent for the Federal Bureau of Prisons.

## IV.  EXHAUSTION

Respondent argues that this Court lacks jurisdiction over this action, even if properly brought pursuant to § 2241, because petitioner has failed to exhaust his administrative remedies.  It argues in its motion to dismiss that petitioner did not exhaust all available administrative remedies prior to filing the instant action because he filed the action prior to obtaining a response to his Request for Administrative Remedy, and as of the date petitioner filed the instant action, he had not exhausted either of the two required appeals.

---

[8] The Court notes that were this action to proceed as a civil action, venue would most likely lie in this Court because petitioner is currently incarcerated in a federal prison within the territorial confines of this Court, and the alleged denials of release to a RRC occurred while he was incarcerated there.

In his response to the motion to dismiss, petitioner points out that he had previously exhausted his administrative remedies, and was merely giving the BOP a second chance to grant his request for release to a RRC or home confinement. He argues, furthermore, that this action is not subject to the exhaustion requirement because he is not challenging the conditions of his confinement in a civil action to which 42 U.S.C. § 1997e applies.

In its reply to petitioner's response, respondent urges the Court to dismiss this action because petitioner concedes that he did not exhaust his administrative remedies prior to filing this action. In his sur-reply, petitioner argues that no exhaustion doctrine requires him to exhaust his administrative remedies twice and further argues that respondent has failed to adequately support its exhaustion defense as required by *Jones v. Brock*, 127 S. Ct. 910 (2007).

Although petitioner correctly argues that petitions under 28 U.S.C. § 2241 are not subject to the statutory requirement of exhaustion of remedies applicable to civil actions in which a prisoner challenges the conditions of his or her confinement, *i.e.*, 42 U.S.C. § 1997e, that fact has no bearing on the exhaustion requirements for § 2241. Such requirements do not arise from statute, but from federal case law. Under such case law, it is well-established that petitioners seeking relief under § 2241 generally must exhaust their administrative remedies prior to presenting their claims in federal court. *See Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (addressing exhaustion in context of a § 2241 challenge by a federal prisoner to a parole decision); *Crumps v. Bureau of Prisons*, No. 1:05-CV-775, 2006 WL 2524102, at *2 (E.D. Tex. Aug. 30, 2006) (report and recommendation adopted by District Court which addressed exhaustion in context of § 2241 action seeking release to a halfway house for last six months of federal sentence); *Martinez v. Childress*, No. 1:05-CV-850, 2006 WL 1804603, at *2 (E.D. Tex. June 28, 2006) (same). Federal prisoners who present a claim under §

9

2241 should exhaust the remedies provided by the BOP. *See, e.g.*, *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (time credit issue); *Crumps*, 2006 WL 2524102, at *2.

Sections 542.10 through 542.19 of Title 28 of the Code of Federal Regulations set out the BOP administrative procedure for inmates who seek formal review of their complaints. Pursuant to this procedure inmates may "seek formal review of an issue which relates to any aspect of [their] confinement." 28 C.F.R. § 542.10. The process generally commences by "present[ing] an issue of concern informally to staff." *Id.* § 542.13. If the inmate is unsatisfied with the informal resolution, he "submits a Request for Administrative Remedy" to commence the formal portion of the administrative process. *Id.* Such request generally must be filed within twenty "calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14(a). Within twenty days of the filing of such a formal request, the Warden generally issues a formal response.[9] *Id.* § 542.18. "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a).[10] The Regional Director generally issues a formal response within thirty calendar days. *Id.* § 542.18. "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* § 542.15(a). General Counsel generally issues a final response within forty calendar days. *Id.* § 542.18. "Appeal

---

[9] The response times set forth in § 542.18 are subject to being shortened for emergency cases and lengthened if the response time is deemed "insufficient to make an appropriate decision." *See* 28 C.F.R. § 542.18. In addition, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

[10] Upon demonstration of "a valid reason for delay," the time limits of § 542.15(a) "may be extended." *See* 28 C.F.R. § 542.15(a).

to the General Counsel is the final administrative appeal." *Id.* § 542.15(a). Upon completing this multiple-tiered review process, federal inmates have exhausted their administrative remedies required for filing a § 2241 petition.

Although prisoners generally must exhaust their administrative remedies prior to filing a § 2241 action, exhaustion of such remedies is not a jurisdictional requirement. *See Hager v. United States Atty. Gen.*, No. 3:04-CV-40-M, 2004 WL 691578, at *1 (N.D. Tex. Mar. 26, 2004), *accepted by* unpub. order (N.D. Tex. Apr. 14, 2004). "Non-jurisdictional exhaustion serves three functions: 'giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review[.]'" *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). "Unlike jurisdictional exhaustion requirements, which the Court may not excuse, a . . . failure to fulfill a non-jurisdictional exhaustion requirement need not be fatal to [an action]." *Holmes v. PHI Service Co.*, 437 F. Supp. 2d 110, 123 (D.D.C. 2006) (citation omitted). In the habeas context, moreover, the Supreme Court has indicated that the district courts have discretion to stay a habeas action so that the petitioner may fully exhaust state remedies. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005); *Rhines v. Weber*, 544 U.S. 269, 278-79 (2005). The Supreme Court has thus at least implicitly agreed that subsequently exhausting available remedies cures an initial lack of exhaustion in the habeas context.

In this instance, petitioner argues that he exhausted available administrative remedies prior to filing this action and respondent must show that he did not exhaust. Because petitioner undoubtedly exhausted all administrative remedies as of December 2006, and because the Court finds that such exhaustion would cure any failure to exhaust prior to filing this habeas action, the Court need not definitively determine whether petitioner had indeed exhausted all available administrative

11

remedies prior to commencing this action in August 2006 or whether respondent bears the burden to show a failure to exhaust. To the extent petitioner had not exhausted all available remedies prior to filing this action, his subsequent exhaustion cures that failure. The Court thus proceeds to the merits of petitioner's claims.

## V. PETITIONER'S CLAIMS

Petitioner challenges the BOP's continued denials to place him in a RRC or home confinement.

Congress has enacted two statutory provisions relevant to the place of incarceration for federal inmates. Section 3621(b) of Title 18 of the United States Code mandates that the BOP "shall designate the place of imprisonment." In addition to that mandatory component, the statute provides discretion to the BOP to "designate any available penal or correctional facility . . . considering" five enumerated factors: (1) the resources of the contemplated facility; (2) offense-specific information; (3) prisoner-specific information; (4) statements of the sentencing court; and (5) pertinent policy statements. *See* 18 U.S.C. § 3621(b). Furthermore, the BOP "may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another." *Id.* Although the statute does not define "penal or correctional facility," no one disputes that a RRC or halfway house qualifies.[11] Conversely, home confinement would certainly not qualify. *See Crowley v. Federal Bureau of Prisons*, 312 F. Supp. 2d 453, 461 (S.D.N.Y. 2004) (noting that BOP Program Statement 7310.01 excludes "home confinement" from the definition of

---

[11] For an overview of why a RRC qualifies as a correctional facility see *Levine v. Apker*, 455 F.3d 71, 82 n.8 (2d Cir. 2006).

"penal or correctional facility"); *United States v. Morales-Morales*, 985 F. Supp. 229, 231 (D.P.R. 1997) (same).

In addition to § 3621(b), which governs the initial designation of the place of imprisonment as well as any subsequent transfers to a different penal or correctional facility, Congress provided for pre-release custody in § 3624(c). That statute provides in pertinent part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

In 1995, the BOP established a "policy and procedures for referral and placement of pre-release inmates in Community Corrections home confinement programs." (*See* Program Statement 7320.01, *Home Confinement* (Sept. 6, 1995), attached as Ex. C to Mot. Dismiss.) According to Program Statement 7320.01:

> The Bureau does **not** have statutory authority to designate a home confinement program for an inmate at the beginning of his or her sentence. This is supported in Title 18, U.S.C., Section 3621, which requires that the Bureau designate any available **penal or correctional** facility as the place of a prisoner's imprisonment.

(*Id.* ¶ 1.) "All inmates referred to community corrections are eligible to be considered for home confinement placement." (*Id.* ¶ 6 (eligibility for home confinement).) In addition, although the BOP provides CCC "services for persons as a condition of probation, parole, or supervised release, only in the most extraordinary circumstances will the Bureau assume responsibility for such persons on home confinement." (*Id.*) The Policy Statement also provides for placement on home confinement following CCC placement and directly from an institution in appropriate circumstances. (*Id.* ¶¶ 11-12.)

Additionally, prior to December 2002, the BOP considered all federal inmates, regardless of the length of their sentence, to be eligible for a six-month maximum placement at a CCC for the end of their sentences, even if such placement exceeded ten percent of the inmate's sentence. *See* BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure* (Dec. 16, 1998). However, in December 2002, the BOP changed its practice and began restricting CCC placements to the final ten percent of an inmate's term of imprisonment, not to exceed six months.

"The December 2002 Policy spawned numerous legal challenges from inmates who previously would have been eligible for CCC placement at any time during their incarceration, including the last six months." *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 367 (E.D.N.Y. 2005) (collecting cases). Consequently, in August 2004, the BOP proposed new regulations to govern CCC placement decisions and, after receiving public comment, the BOP published a new rule on January 10, 2005. *Id.* at 368-69. The new regulations became effective on February 14, 2005, and are codified at 28 C.F.R. §§ 570.20 and 570.21. Section 570.20 addresses the purpose of the regulations:

> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of the pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

Section 570.21 addresses the timing of CCC designations:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

>   (b) We may exceed these time frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A), or shock incarceration program (18 U.S.C. 4046(c)).

In light of these statutory provisions and relevant regulations and program statements, the Court considers petitioner's challenges the denials to place him in a RRC or home confinement.

**A. <u>Placement in a CCC</u>**

Petitioner challenges the February 2005 regulations regarding his placement in a RRC. Respondent argues that (1) § 3621(b) only authorizes consideration of the enumerated factors when it has elected to consider whether to transfer a prisoner; (2) the February 2005 regulations are entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); (3) the Supreme Court has already upheld the BOP's categorical exercise of discretion in a different context in *Lopez v. Davis*, 531 U.S. 230 (2001); (4) the February 2005 regulations do not conflict with congressional intent as revealed through the relevant legislative history of § 3621; and (5) the § 3621(b) factors are discretionary.

Four courts of appeal have considered the validity of the 2005 regulations, and each has invalidated them because the regulations preclude consideration of all factors enumerated in 18 U.S.C. § 3621(b). *See Wedelstedt v. Wiley*, ___ F.3d ___, ___, No. 06-1461, 2007 WL 512517, at *1-7 (10th Cir. Feb. 20, 2007); *Levine v. Apker*, 455 F.3d 71, 85-87 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 246 (3d Cir. 2005). With *Woodall*, the Third Circuit became the first court of appeals to address the validity of the 2005 regulations. *See* 432 F.3d at 244. It noted that the district courts were divided, but agreed with "the reasoning of those courts that have found the regulations unlawful." *Id.* It held:

> The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

*Id.* In making such holding, the Third Circuit specifically rejected the same five arguments that respondent makes in this case. *See id.* at 244-50. In *Fults*, *Levine*, and *Wedelstedt*, the Eighth, Second, and Tenth Circuits respectively followed the rationale of the majority opinion in *Woodall*. *See Wedelstedt*, 2007 WL 512517, at *1; *Levine*, 455 F.3d at 87; *Fults*, 442 F.3d at 1091-92.

Although there is unanimity within the circuits that have addressed the validity of the February 2005 regulations, each case lacked unanimity within the panel of appellate judges for different reasons. *See Wedelstedt*, 2007 WL 512517, at *8-10 (Hartz, Circuit Judge, dissenting because he did not consider the five factors set forth in § 3621(b) to be mandatorily required to be considered in every case); *Levine*, 455 F.3d at 87-91 (Raggi, Circuit Judge, dissenting based on a construction of the February 2005 regulations "as a permissible categorical rejection of CCCs as appropriate and suitable facilities for § 3621(b) designations generally, with a limited exception only for those circumstances where Congress has identified statutory considerations pursuant to 18 U.S.C. §§ 3621(e)(2)(A), 3624(c), or 4046(c), in addition to those catalogued in § 3621(b)"); *Fults*, 442 F.3d at 1093 (Riley, Circuit Judge, dissenting for same reasons as dissent in *Woodall*); *Woodall*, 432 F.3d at 251-52 (Fuentes, Circuit Judge dissenting because "the § 3621(b) factors need not be considered by the BOP until an inmate is actually considered for a transfer, and [] the BOP is not required to

16

consider any inmate for transfer to a CCC until the lesser of six months or ten percent of an inmate's sentence remains").

The Court finds the majority opinions in *Woodall*, *Fults*, *Levine*, and *Wedelstedt* more persuasive. Section 3621(b) governs the initial placement of a federal prisoner in BOP-designated place of imprisonment. It also governs the transfer of a federal prisoner to any other penal or correctional facility regardless of when such transfer decision is made. In both initial placement and transfer decisions, the five factors must be considered, and three of them require individual consideration. So long as a RRC or halfway house is encompassed within the phrase, "penal or correctional facility", § 3621(b) guides the BOP in exercising its discretion to designate the precise place of imprisonment. As found in *Woodall*, *Fults*, *Levine*, and *Wedelstedt*, the February 2005 regulations, *i.e.*, 28 C.F.R. §§ 570.20 and 570.21, are invalid because they do not permit the BOP to consider CCC placement prior to the last ten percent of his sentence. "However, that the BOP may assign a prisoner to a CCC does not mean that it must." *Woodall*, 432 F.3d at 251. Consequently, the appropriate remedy in this case is an order requiring the BOP to consider in good faith whether petitioner should be transferred to a RRC considering the five factors set out in § 3621(b) without regard for §§ 570.20 and 570.21. *See id.*; *Wedelstedt*, 2007 WL 512517, at *8.

B. <u>Placement in Home Confinement</u>

Petitioner also challenges the BOP's continued denials to place him in home confinement. However, because home confinement falls outside the boundaries of a "penal or correctional facility", § 3621(b) provides no statutory authority for the BOP to designate home confinement as a place of imprisonment. By specifically stating that "[t]he authority provided by this subsection may be used to place a prisoner in home confinement", § 3624(c) implies that the BOP otherwise has no author-

17

ity to place a prisoner in home confinement. Program Statement 7320.01 supports such implication or inference. Until petitioner is within the last ten percent of his sentence, not to exceed six months, § 3624(c) provides no basis for placement in home confinement. Because petitioner has not reached that point in his federal sentence, the BOP properly denied him release to home confinement without consideration of the factors in § 3621(b) regardless of the February 2005 regulations.

## VI.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** respondent's motion to dismiss and **GRANT** petitioner's federal petition for writ of habeas corpus to the extent petitioner seeks to invalidate 28 C.F.R. §§ 570.20 and 570.21. The Court should substitute David Berkebile as respondent for the Federal Bureau of Prisons, and order him to release petitioner to an appropriate halfway house, unless the Bureau of Prisons considers in good faith whether petitioner should be transferred to a RRC considering the five factors set out in § 3621(b) without regard for §§ 570.20 and 570.21. The Court should require that the BOP conduct such consideration and report the results to the Court within a precise date specified by the Court after reviewing filed objections, if any, to this recommendation.

**SIGNED this 19th day of March, 2007.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE